RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION
Northern

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| CEDRIC HICKS | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:17-cv-731 |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | |
| UNIVERSITY OF ALABAMA | ) | |
| (UAB) Montgomery Campus | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

1.    Plaintiff, Cedric Hicks, brings this action pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; 42 U.S.C. 2000e-5(b), and the

Age Discrimination in Employment Act, 29 U.S.C. §626 et seq., and the 14th Amendment

to the Constitution of The United States of America to remedy acts of employment

discrimination and retaliation perpetrated against him by Defendants. Plaintiff contends

that Defendants discriminated and retaliated against him by refusing to address him by

his professional title as "Dr. Hicks" like they would his white and or female

contemporaries despite repeated requests to do so, subjecting him to racial slurs,

denigrating him and his abilities in from of his peers and upper management. Defendants

discriminated against Plaintiff and harassed him by requiring him to perform menial tasks

below his positon and stature as a faculty authority by demanding him to enforce a food

1

and beverage policy in the Medical Library while denying him the authority or administrative support to enforce the policy which led to an increasingly hostile environment between him and his coworkers, superiors, and residents, and further, by subjecting him to different and additional performance evaluation criteria than those of his white and or female counterparts. Plaintiff was discriminated and retaliated against because of his race (African-American), color (Black), national origin (African), sex (Male), and age (over 40), and for protesting race, sex and age discrimination. Plaintiff contends that Defendants discriminated against him by subjecting him to constant harassment such as denying him opportunities for advancement, academic enrichment through special projects and literary submissions, thus making his work environment so contentious and toxic it became unbearable, forcing his constructive discharge. These actions were taken against him due to his race, color, national origin, sex, age and in retaliation for prior EEO activity. Plaintiff further asserts that Defendants retaliated against him for having complained previously about such discrimination including complaining about the use of the slur or racial epithet "Coon" in his presence. Defendants maintained a hostile working environment against Dr. Hicks by the constant unjustified berating of his performance and lack of constructive feedback and support shown to others outside his protected class. Plaintiff was further subjected to being isolated in his role and department from coworkers and by his supervisors, all based on discrimination and retaliation. All these actions caused him to suffer pain and anguish, a constricted work and social life, depression, hopelessness, and anxiety, as a direct result of the discriminatory treatment he was subjected to, and ultimately his constructive dismissal from employment. Defendant, University of Alabama Birmingham (UAB) Montgomery

2

Campus adheres to and routinely exercises a pattern and practice of discrimination and harassment by not disciplining white and or female employees for actual and often egregious misconduct, while disciplining black male employees often for no misconduct at all, or for minor infractions or rules violations.

## II.    JURISDICTION

2.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(3) and 1343(4). This is a suit instituted pursuant to Title VII  of  the  Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.; and; and 42 U.S.C. Sections 1981 and 1981A, and; 29 U.S.C. Section 2601 et seq., as amended, 42 U.S.C. 2000e-5(b), 42 USCS §§ 12101, 12102 et seq., and 29 U.S.C. 626, providing for injunctive and other relief against color, national origin, race, age, and sex, discrimination and racial harassment and retaliation and reprisal.

## III.   VENUE

3.    Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. §7703(b)(2); as Plaintiff was employed by Defendants in this judicial district, Plaintiff's employment records are maintained by Defendants in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district; the alleged unlawful employment practices were committed in this district, and defendants have their principal offices in this district located at 2119 East South Boulevard, Suite 304; Montgomery, Alabama 36116.

## IV.   ADMINISTRATIVE EXHAUSTION

4.     Plaintiff filed a charge of discrimination (420-2016-02231) on or about May 4, 2016 charging discrimination based on race, color, sex, age, national origin and retaliation for prior protected activity, with the U.S. Equal Employment Opportunity Commission, Birmingham District Office (See Exhibit A attached hereto).

5.     Plaintiff received a Notice of Right to Sue from the EEOC regarding all his claims less than ninety (90) days prior to filing her Complaint (See Exhibit B attached hereto).

## V.   PARTIES

6.     Plaintiff, Cedric Hicks, is an African-American male who is at least 40 years old, is a citizen of the United States of America and a resident of Shelby County Alabama. At all times relevant to this suit and until his constructive discharge on April 2nd, 2016 based on discriminatory animus,  Hicks was employed as Manager, Department Medical Library in the School of Medicine (SOM) in Montgomery from September 14, 2014 until he submitted his letter of resignation on March 2nd, 2016 which led to his constructive discharge on April 2nd, 2016.

7.     Defendant, University of Alabama at Birmingham, Montgomery Campus does business in the state of Alabama. Defendant employs more than Five Hundred (500) employees.

8.     Defendant University of Alabama Birmingham Montgomery Campus is and was an entity doing business in Montgomery County in the State of Alabama, and

during all times relevant to this matter, Defendant maintained offices in the State of Alabama located at 2119 East South Boulevard, Suite 304; Montgomery, AL 36116.

9.     At all times relevant to the instant complaint, Dr. Ramona Hicks was the Program Director and Dr. Cedric Hicks' immediate supervisor and in her individual and official public capacity as officer, agent, supervisor, decision and or policy maker for Defendant University of Alabama in Birmingham Montgomery Campus.

10.     At all times relevant to the instant complaint, Dr. W. J. Many, Jr., was the Associate Dean in his individual and official public capacity as officer, agent, supervisor, decision and or policy maker for Defendant University of Alabama in Birmingham Montgomery Campus.

11.     For the bulk of the time relevant to the instant complaint, Valerie Johnson Treat was a Director, Admin & Fiscal Affairs and Human Resources and in her individual and official public capacity as officer, agent, supervisor, decision and or policy maker for Defendant University of Alabama in Birmingham Montgomery Campus.

12.     At all times relevant to the instant complaint, Dr. Todd Smith was a Director, Admin & Fiscal Affairs in his individual and official public capacity as officer, agent, supervisor, decision and or policy maker for Defendant University of Alabama in Birmingham Montgomery Campus.

13.     At all times relevant to the instant complaint, Dr. Kincer was a manager, supervisor, or decision maker  in his individual and official public capacity as officer, agent, supervisor, decision and or policy maker for Defendant University of Alabama in Birmingham Montgomery Campus.

## VI.     STATEMENT OF FACTS

14.     Plaintiff Cedric Hicks, a black male, was the Manager, Department Medical Library in the School of Medicine (SOM) in Montgomery from September 14, 2014 until he submitted his letter of resignation on March 2nd 2016, resulting in his constructive discharge on April 2, 2016.

15.     Throughout Plaintiff's employment with Defendants, Plaintiff performed his job duties in an exemplary and highly competent manner.

8.     During his first week of employment, Plaintiff was introduced to the students as "Cedric" even after he informed his supervisor he preferred to be introduced by his proper title, Dr. Cedric Hicks.

9.     The administration was put on notice of his complaint of discrimination beginning with this same incident in 2014.

10.     After reminding his supervisor that he had a Doctorate degree and requesting to be introduced as Dr. Cedric Hicks the administration told Plaintiff that his concern to be acknowledged on a professional level equal to theirs was unimportant.

11.     The administration, including Dr. Ramona Hicks and Dr. W. J. Many had intimate knowledge of Complainant's complaints of disparate treatment, racial intolerance, and exclusion from the very first month of his employment in September of 2014 until his constructive discharge.

12.     It is uncontroverted that the administration was aware of Plaintiff's repulsion and opposition to the racial climate at the Montgomery Campus when he submitted his Equity/Diversity Complaint Form on March 21, 2016 prior to his constructive discharge on April 2, 2016.

13.     Based on Plaintiff's six-month appraisal Dr. Hicks "met all and exceeded some expectations" which is the equivalent of a rating of 4 on what appears to be a rating scale in which the highest rating one can attain is a 5.

14.     Six months later, on his annual appraisal, Plaintiff only "met some exceptions" which translates into a rating of 2.

15.     During this evaluation period, Dr. Cedric Hicks inquired about his performance on several occasions but received little feedback, none of which suggested any lack of performance on his part or areas in need of improvement.

16.     Dr. Ramona Hicks often stated. "Cedric we trust your judgment." Yet the actions of Hicks and others clearly show that the administration neither trusted, respected nor valued Plaintiff as a member of the team.

17.     There is no documented or logical reason for the drastic reduction in Dr. Cedric Hicks performance rating from six months prior other than discrimination and retaliation.

18.     According to Defendants, the reason for such a drastic change in Plaintiff's rating was reportedly because the first rating "was intended in part to help encourage and develop Complainant as a new employee" and was not an accurate assessment of his performance, which is pure pretext.

19.     Supporting and corroborating evidence indicates the fact that the lower rating occurred only after Plaintiff became vocal about his disparate treatment and the hostile climate and culture he was being exposed to at the Montgomery Campus.

19.     Plaintiff was promised a salary increase during his interview when the enrollment increased.

7

20.    Enrollment increased by 800%, yet Plaintiff's salary remained unchanged.

20.    As his tenure progressed, the hostility became increasingly unbearable.

21.    Complainant was not provided with the administrative guidance or support he needed and deserved to succeed.

22.    Complainant was placed in the impossible position of implementing and enforcing a no food and drink policy in the library which caused friction and retaliation from all the customers and staff he encountered including the supervisors who directed him to institute and enforce the policy.

23.    The library was formerly the physicians lounge and had been for the past 30 years."

24.    Unknown to the Plaintiff at the time and later revealed to him in the preparation for his annual appraisal, surveys were provided to several of the employees and or students and interns with whom he had been given the unenviable task of trying to enforce the no eating and drinking policy among other directives.

25.    In the past, Dr. Cedric Hicks and no other employees were subjected to a survey by others in the preparation of their evaluation. Plaintiff was not allowed to view the survey results or challenge their authenticity of content.

26.    Plaintiff's supervisors Dr. W. J. Many and Dr. Ramona Hicks instructed him to include the food and drink policy in his goals and objectives, this very same policy which was the source of much tension between Plaintiff and several of the employees and other customers.

27.    The food and drink policy was included as an addendum to Plaintiff's original goals and objectives after the fact.

28.     Because of Complainant's race and age, he was placed in an impossible position from the beginning in trying to enforce a policy that was unenforceable by him on several levels.

29.     Dr. Cedric Hicks lacked the administrative authority to prevent physicians from consuming food and drink in the library.

30.     Plaintiff was directed to draft and enforce no food or drink policy that some of the hospital administration finally signed after multiple requests for their signatures.

31.     Dr. Kincer, refused to sign the food and drink policy completely. He initially agreed to tell his students not to eat in the library and leave trash everywhere. Yet a few days later, he returned to eating breakfast with all of his residents in the library.

32.     Dr. W. J. Dr. Many had the authority to insure implementation of and adherence to the food policy but would not. Dr. Many told Plaintiff on multiple occasions, "If you see people eating in the library, I will deal with them.", and despite being notified by Plaintiff of the ongoing problem Dr. Many never took any action related to supporting Dr. Hick in enforcing the rule he was charged with instituting.

33.     Plaintiff asked Dr. Many for assistance therewith and expressed to him the difficulty in enforcing the policy; however, Dr. Manny never provided any assistance.

34.     Dr. Many and Dr. Ramona Hicks continued to tell Dr. Cedric Hicks, "You must stop people from eating in the library" despite his informing them that without their actual intervention with the perpetrators he was powerless to accomplish this task.

35.     Demanding that Dr. Hicks enforce this food and drink policy against mostly young white patrons of the library with no support or authority from management

9

helped and contributed to the creation of a hostile environment toward Plaintiff based on his race and age.

36.     The administration knowingly manufactured an environment that constantly placed him in conflict with his mainly white customers and undermined his authority to accomplish his assigned duties.

37.     In October of 2014, Plaintiff spoke with Dr. Ramona Hicks and verbally requested an office. This request was in response to the growing hostility Plaintiff was being subjected to in the library and the fact that all of his counterparts outside his protected class were provided office space.

38.     Despite inquiring several times from the date of his hire in September of 2014, Dr. Cedric Hicks was denied a private office and job description like his counterparts outside his protected class for almost a year until July of 2015.

39.     There were multiple office spaces available in the UAB administrative suite during the whole time Dr. Hicks was denied office space.

40.     Defendants' actions were malicious and intended to further intimidate, humiliate, retaliate against and harass Dr. Hicks because of his protected class.

41.     Plaintiff wrote an abstract on developing a library embedded evidence based medicine curriculum, which was accepted by the Medical Library Association who invited Plaintiff to their conference to present his paper.

41.     Plaintiff's abstract and research proposal was a professional development activity, which the administration encouraged in Dr. Hicks' goals and objectives and evaluations.

10

42.     The program description did not require IRB approval due to its theoretical nature.

43.     Dr. Many encouraged Complainant to pursue this endeavor.

44.     Plaintiff completed the required CITI training.

45.     Months later, despite his being fully prepared and with no logical or legal basis for it, Plaintiff was told that he was not allowed to present at the conference. This was yet another act of retaliation and discrimination against Dr. Cedric Hicks to intimidate and harass him based on his race, age and prior protected activity.

46.     Dr. Hicks, the Plaintiff was planning a health fair which was made known to the administration in October 2015.

47.     It was supported by the administration verbally and via email through all phases of planning.

48.     Dr. Hicks supervisors were aware of every aspect of the health fair through the planning stages.

49.     Six weeks prior to the event, Dr. Todd Smith became increasingly critical of the health fair and Plaintiff's work in preparation, Plaintiff's successful progress on the project showed there was no basis for his criticism other than retaliation and discrimination based on race, age and the prior protected activity of the Plaintiff in complaining about the ongoing discrimination and hostile work environment he was being subjected to.

50.     On Plaintiff's evaluation, defendants state he was agitated, aggressive and lacked the ability to reason all of which were false statements reflective of the racial animus and discriminatory motivation of the authors of and contributors to the document.

11

51.     Plaintiff's education and work history reflect and verify him to be intelligent, articulate, dependable and professional.

52.     During his time on the Montgomery Campus, it is indisputable that Plaintiff transformed the location, formerly the physicians' lounge into a full service medical library, completely contrary to attributes of an individual who lacks the ability to reason.

53.     Defendants have made several false statements about the Plaintiff such as the previous one, in their deliberate efforts to malign his character and discriminate against his because of his race, age and retaliation.

54.     Contrary to what Plaintiff was told about the departure of his predecessor, Martella Nelson, an African American female during his interview, Plaintiff later learned that Ms. Nelson left under a set of circumstances similar to those that led to his departure (constructive discharge) from The University of Alabama Birmingham Montgomery Campus.

55.     Plaintiff was told during the interview that Nelson lacked the skills to meet the needs of the library, these same false comments among others, are now being echoed in reference to Dr. Cedric Hicks.

56.     The utterances of racial jokes and slurs by management, faculty, and students were commonplace at the Montgomery Campus including to the specific instances below.

57.     "Dr. Many asked Dr. Hicks one day what does a Pakistani pizza do? It blows up in your face.

12

58. On or about August 25th 2015, Dr. Many was walking into a room talking to Kody Bliss; however, he could not see Plaintiff. He stated, 'those coon asses play better at night.'

59. When Dean Many entered the room and saw Plaintiff, he looked startled.

60. Plaintiff asked Dr. Many to repeat what he just said and without hesitation he replied, "I said coon ass".

61. The word coon is a racial slur referring to black men and women without question or excuse.

62. The fact that Dr. Many repeated the racial slur without hesitation is a classic example of his disregard for how invidious, repulsive, and derogatory that word is to a Black person, and his indifference to uttering it in a workplace environment.

63. Dr. Many put his racist tendencies and predisposition to racist conversations and actions on full display for Plaintiff as if daring him to confront him about it because of his supervisory position over him.

## VII. FIRST CLAIM OF RELIEF

### TITLE VII – RACIAL/COLOR/NATIONAL ORIGIN DISCRIMINATION UAB

64. The foregoing paragraphs 1-63 are realleged and incorporated by reference herein.

65. This is a suit for racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, for employment discrimination based on race.

66. Plaintiff routinely performed his duties as the Manager, Department Medical Library in the School of Medicine (SOM) in Montgomery in a highly competent

and professional manner. Plaintiff never had complaints or comments about him failing to perform his duties in a highly professional and efficient manner during his entire tenure with Defendants organization until he increasingly voiced his discriminatory discontent.

67.     Plaintiff suffered unlawful employment practices including but not limited to discrimination and disparate treatment and subjection to a hostile work environment due to verbal harassment and intimidation from supervisory personnel, unfair discipline including but not limited to excess and unfair scrutiny of his performance, lowered appraisals not reflective of his actual performance, and being set up for dismissal triggering his subsequent constructive discharge.

68.     Plaintiff was discriminated and retaliated against by being given the task of food monitor in the library which Defendant's knew he had neither the authority nor the support from the Defendant's to perform, yet he was held accountable for not accomplishing the task.

69.     Plaintiff was also humiliated in the fact that his supervisors, peers, and even subordinates refused to refer to him by his proper title as Dr. Hicks despite his repeated requests to the contrary.

70.     Plaintiff was subjected to overt racial epithets in the work place on several occasions.

71.     Plaintiff complained to Defendants regarding their discriminatory practices, harassing communications, and negative and unwarranted job performance rating, including but not limited failure to provide adequate feedback regarding his performance, failure to provide office space after he requested it even though there was

14

adequate office space available, overt excessive scrutiny he was subjected to while his white and/or female counterparts were not subjected to the same conditions and lack of support, nor did they have their performance evaluations artificially lowered based on fabricated and unfair student evaluations and unrealistic expectations related to food consumption in the medical library.

72.     Hicks was further humiliated when his supervisor berated and disrespected his credentials and abilities in a meeting with his peers and upper management.

73.     Defendants have a displayed a pattern and practice of discrimination and retaliation against black employees including but not limited to denial of equal access and consideration for promotions and advancement as Dr. Cedric Hicks has been subjected to, and a propensity of only disciplining blacks given the fact that Ms. Martella Nelson, an African American female, left Defendant's employment under circumstances similar to those now being perpetrated against Dr. Hicks as well.

74.     Dr. Cedric Hicks was denied numerous requests for the assignment of an office space unlike his counterparts outside his protected class.

75.     Defendants discriminated and retaliated against Plaintiff with respect to job duties, and assignments, job evaluations, pay, working conditions, hiring, promotion, hostile work environment, discipline, and other terms and conditions of employment in violation of Title VII of the Civil Rights Act 1964, 42 U.S.C. Section 2000e, et seq., as amended by the Civil Rights act of 1991; 42 USCS Section 12112 as amended; and U.S.C. Sections 1981 and 1981A. 1983; 42 U.S.C. 2000e-5(b), 29 U.S.C. 626, 42 U.S.C. 12117. When Plaintiff attempted to suspend a physician's access to the library due to

15

constant food and drink policy violations, the head of security informed him that he could

not deny doctors access to the library, a fact of which the defendants was full aware.

76. Thus, Defendant The University of Alabama Birmingham, Montgomery

Campus by its actions as outlined above willfully and intentionally have discriminated

against Plaintiff in the terms and conditions of Plaintiff's employment because of

Plaintiff's race in violation Title VII of the Civil Rights Act of 1964, as amended,

codified at 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, for employment

discrimination based on race.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the following relief:

        a.    Placement in the position(s) in which he would have worked
absent defendant UAB's discriminatory treatment or Front Pay;

        b.    Back Pay;

        c.    Pre-judgment interest;

        d.    Attorneys' fees; Costs; Plaintiff is entitled to an award of attorney
fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

        e.    Compensatory damages for loss of wages, loss of benefits,
including, but not limited to, retirement and pension benefits,
mental anguish, emotional distress, and embarrassment, both past
and future; and

        f.    Such other legal or equitable relief, including injunctive relief, as
may be appropriate to effectuate the purposes of TITLE VII or to
which he may be entitled.

## VIII.   SECOND CLAIM FOR RELIEF

### TITLE VII – SEX  DISCRIMINATION UAB

77.     The foregoing paragraphs 64-76 are realleged and incorporated by reference herein.

78.     This is a suit for sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, for employment discrimination based on sex.

79.     Plaintiff routinely performed his duties as the Manager, Department Medical Library in the School of Medicine (SOM) in Montgomery in a highly competent and professional manner. Plaintiff never had complaints or comments about him failing to perform his duties in a highly professional and efficient manner during his entire tenure with Defendants organization until he increasingly voiced his opposition to discrimination and retaliation against him by the Defendant.

80.     Defendants failed to fairly and accurately evaluate Plaintiff's performance, provide him with opportunities for advancement, subjected him intense and unfair scrutiny in the workplace, caused him to suffer a hostile work environment, and refused to provide him with office space or refer to his by his title of "Dr. Hicks" based on his sex.

81.     Defendants did not subject any of Dr. Hick's female counterparts to this kind of constant discriminatory maltreatment during the times relevant to this complaint.

82.     Thus, Defendant The University of Alabama Birmingham, Montgomery Campus by its actions and or omissions willfully and intentionally have discriminated against Plaintiff in the terms and conditions of Plaintiff's employment because of

17

Plaintiff's sex in violation Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, for employment discrimination based on sex.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the following relief:

        a.     Placement in the position(s) in which she would have worked absent defendant UAB's discriminatory treatment or Front Pay;

        b.     Back Pay;

        c.     Pre-judgment interest;

        d.     Attorneys' fees; Costs; Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

        e.     Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement and pension benefits, mental anguish, emotional distress, and embarrassment, both past and future; and

        f.     Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of TITLE VII or to which she may be entitled.

## IX.    THIRD CLAIM FOR RELIEF

### REPRISAL AND RETALIATION-UAB

83.    The foregoing paragraphs 77-82 are realleged and incorporated by reference herein.

84.    It was following Plaintiff's repeated complaining to his supervisors about the harassment and disparate treatment he was being subjected to that he began to

experience heightened scrutiny in his job responsibilities, lack of candor and blatant disrespect from the staff, students and upper management.

85.    Plaintiff was subjected to disparate treatment  in the terms and conditions of his employment and retaliation including,  unjustified discipline, denial of basic support by Defendants, denial of opportunities for advancement, lowering of his performance appraisals without legal or factual justification and other actions intended to harass, intimidate and deter Plaintiff from pursuing his claims of discrimination.

86.    The Defendants' conduct as alleged above constitutes retaliation and or reprisal against Plaintiff because he engaged in activities protected by Title VII of the Civil Rights Act. Namely complaining about the harassment and disparate treatment he received and the purposeful placement of Plaintiff in a position to enact and enforce a food policy he had neither the authority nor support to enforce, subjection to racial slurs by supervisors and others, being denied office space and not being addressed by his proper Title, and being placed under heightened scrutiny since voicing his opposition to Defendant's willful violations of his rights under Title VII. Defendants' stated reasons for their conduct were not their true reasons, but were rather pretext to hide their retaliatory and discriminatory aims.

87.    Defendants relegated Mr. Hicks to nothing more than a janitor in requiring him to enforce their "no eating policy" while knowing he lacked their authority because of their withholding the support necessary to ensure its enforcement, and forcing him to clean up behind the perpetrators in his efforts to maintain the professional look and integrity of the medical library.

88.     Plaintiff was subjected to disparate treatment in the terms and conditions of his employment and retaliation including, unjustified discipline, denial of basic support by Defendants, denial of opportunities for advancement, lowering of his performance appraisals without legal or factual justification and other actions intended to harass, intimidate and deter Plaintiff from pursuing his claims of discrimination.

89.     Defendants were keenly aware of the growing hostility directed at Dr. Hicks by the individuals they chose to survey in preparation for the completion of his performance appraisal.

90.     Those same ratings are and were used in decisions of whether to award or not award bonuses, pay increases, promotions and job advancement possibilities. No other employee outside Mr. Hicks' protected class is subjected to such a process in the preparation of their evaluations.

91.     Defendants, without legitimate reason, other than to further humiliate and retaliate against Dr. Hicks, prevented the approval of his previously lauded research proposal, citing purely fabricated reasons for doing so. Dr. Hicks was later informed he would not be presenting his work as scheduled at the Medical Library Association conference, all overt attempts to further discriminate and humiliate Dr. Hicks.

92.     Also after Plaintiff complained to Defendants about disparate treatment and discriminatory acts against him, the Defendants became critical of every aspect Plaintiff's work performance in preparation of the upcoming health fair project he was executing, even criticizing the very planning that the administration previously approved, despite being updated throughout each phase of the planning process.

93.     Defendants, The University of Alabama at Birmingham, Montgomery Campus's actions against Hicks in subjecting him to harassing and demoralizing conduct, and set him up for dismissal based on false and lowered performance appraisals and threatened disciplinary action were deliberate and calculated. These accumulated acts and omissions forced his departure from the University by constructive discharge with the submission of his letter of resignation terminating his employment were in violation of Title VII, and were taken with malice or reckless indifference to the federally-protected rights of the Plaintiff.

94.     As a proximate consequence of the violations of Title VII by Defendant The University of Alabama at Birmingham, Montgomery Campus, Plaintiff has suffered and will suffer damages to his professional life and future career opportunities, future pecuniary losses, loss wages, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the following relief:

   a.    Placement in the position(s) in which she would have worked absent defendant UAB's discriminatory treatment or Front Pay;

   b.    Back Pay;

   c.    Pre-judgment interest;

   d.    Attorneys' fees; Costs; Plaintiff is entitled to an award of attorney fees and  costs under Title VII, 42 U.S.C. §2000e-5(k).

   e.    Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement and pension benefits,

21

mental anguish, emotional distress, and embarrassment, both past and future; and

f.      Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of TITLE VII or to which she may be entitled.

## X.      FOURTH CLAIM FOR RELIEF

## TITLE VII 42 U.S.C. § 2000E-3(a) – HOSTILE WORK ENVIRONMENT UAB
## (Hostile and Abusive Working Environment Harassment)

95.      The foregoing paragraphs 83-94 are realleged and incorporated by reference herein.

96.      It is uncontroverted that the administration was aware of Plaintiff's repulsion and opposition to the racial climate at the Montgomery Campus when he submitted his Equity/Diversity Complaint Form on March 21, 2016 prior to his constructive discharge on April 2, 2016.

97.      Defendants were keenly aware of the hostility daily directed at Dr. Hicks by the employees, staff and /or patrons  whom they chose to survey in preparation for the completion of his performance appraisal, ratings of which are used in the award or not of bonuses, directly impacts pay increases and promotions and job advancement possibilities. No other employee outside Mr. Hicks' protected class was subjected to such a process in the preparation of their evaluations

98.      Defendants routinely treated Hicks in a negative and disparate manner. He has been subjected to a hostile work environment and reprisal based on discrimination

22

and prior protected activity, by harassment, unfair discipline, inadequate or no feedback when asking his management about his performance yet when his evaluation is completed it is a dismal reflection of his actual performance and no reflection of the verbal accolades he did receive in reference to his performance.

99. Dr. Hicks was subjected to continuous unfair scrutiny and observation not experienced by his white and or female counterparts similarly situated starting in 2014 when he voiced his opposition to discriminatory acts directed at him by his supervisors, peers and patrons of the medical library. The unfair discipline including but not limited to counseling and being berated in front of his peers and management has been ongoing since 2014.

100. Despite his performance and academic excellence Dr. Hicks was denied opportunities for advancement and professional development on a regular basis. Dr. Hicks qualified for an opportunity to be published and to present before a national library conference only to be denied the opportunity based on race, age, and sex discrimination by his supervisors.

101. Dr. Hicks made substantial improvements to the medical library during his tenure only to have his accomplishments belittled and or ignored by his supervisors.

102. Dr. Hicks worked on special projects including but not limited to a health fair which took months of planning and development outside his regular duties at the library only to have his project eventually cancelled based on racial animus, discrimination, and the perpetuation of a hostile working environment.

103. Dr. Hicks has suffered lost wages, lost opportunities for advancement inside and outside the University. He has been caused to suffer pain and anguish due to

the intentional infliction of emotional distress by the Defendants. He has suffered a decline in his general health and a contracted social life as a direct result of the hostile work environment perpetuated against him by the Defendants.

104.   Plaintiff was subjected to a hostile work environment intended to force his failure in performance and otherwise interfere with his ability to perform his duties on a daily basis including but not limited to assigning him to establish and enforce the "no eating and drinking policy" in the newly erected library.

105.   Plaintiff was subjected to a hostile work environment by Defendant use of the unenforceable policy as bases for Plaintiff's lowered evaluation ratings.

106.   Plaintiff was subjected to a hostile work environment by Defendant's who used survey feedback on Dr. Hicks' performance evaluation ratings, while no other employees were subjected to this same means of gathering information in their performance evaluation process.

107.   Plaintiff was subjected to a hostile work environment that substantially interfered with his job performance when his supervisors watched his actions and activities in the medical library on a daily basis, for the purpose harassment and as unfair surveillance and for an opportunity to criticize and denigrate his performance. Plaintiff's purchasing decisions were often ignored or scrutinized by a group of individuals who admittedly had verily minimal understanding of librarianship.

108.   Defendants did not subject individuals outside Dr. Hicks protected class to this same heightened surveillance and scrutiny during the times relevant to this complaint.

24

109.    The acts and or omissions of the Defendants as described herein were so severe and pervasive they created a hostile work environment which was maintained and escalated until Plaintiff's retaliatory and discriminatory constructive discharge on or about April 2nd, 2016

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the following relief:

a.    Placement in the position(s) in which he would have worked absent defendant UAB's discriminatory treatment or Front Pay;

b.    Back Pay;

c.    Pre-judgment interest;

d.    Attorneys' fees; Costs; Plaintiff is entitled to an award of attorney fees and  costs under Title VII, 42 U.S.C. §2000e-5(k).

e.    Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement and pension benefits, mental anguish, emotional distress, and embarrassment, both past and future; and

f.    Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of TITLE VII or to which he may be entitled.

## XI    FIFTH CLAIM FOR RELIEF

## EQUAL PROTECTION OF THE LAW USCS CONSTITUTIONAL AMENDMENT 14 TO THE UNITED STATES CONSTITUTION  UAB

**(Violation of the 14th Amendment to the United States Constitution)**

110.    The foregoing paragraphs 95-109 are realleged and incorporated by reference herein.

111.    Defendants have denied the Plaintiff equal protection of the law in violation of USCS Const. Amend. 14, by refusing to grant him equal employment opportunity and discriminating against him based on his race, and sex, Black and Male, Age over 40, Retaliation prior complaints of discriminatory conduct, and national origin African American. Defendants are in ongoing violation of this law by their continued constructive termination of the Plaintiff based on his race, age, national origin and sex, and continuing to enforce the unfair constructive discharge of the Plaintiff based on discrimination and retaliation for his protected prior activity. There was a systematic pattern of racial bias, oppression and disrespect that forced Plaintiff to submit his letter of resignation on March 2nd, leading to his constructive discharge on April 2nd, 2016.

## XII.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court provide relief as follows:

1.    Declaring that the Defendant organization maintained and maintains in the UAB, system a policy and practice of race, age, national origin, color and sex discrimination by managers and supervisors against Male African American managers over 40.

2.    Declaring that the Defendant organization and individuals maintained and maintain at UAB, a policy and practice of discrimination, reprisal, retaliation, and a

hostile work environment against Plaintiff a black male based on race, sex, age, national origin, color and prior protected activity.

      3.    Directing the agency by appropriate injunctive orders to eliminate such policies and practices.

      4.    Directing the agency to take specific corrective action for the discrimination and retaliation in the past.

      5.    Awarding Plaintiff back pay, including lost wages, benefits and bonuses, and seniority, front pay, back pay, plus interest, reinstatement, relocation, and or compensation for loss of future income in lieu of relocation into the position Plaintiff would have held in the absence of discrimination and retaliation, and whatever compensatory and punitive damages this Honorable Court finds due and owed to Plaintiff.

      6.    Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

## XIII. JURY DEMAND

**PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY.**

      Respectfully submitted,

      s/Cedric Hicks
      Cedric Hicks
      Plaintiff

      Tyrone Townsend
      Tyrone Townsend
      Attorney for Plaintiff

TYRONE TOWNSEND
Of Counsel
Attorney for the Plaintiff
P.O. BOX 2105
Birmingham, Alabama 35201
Telephone: (205) 795-3050
Facsimile: (800) 410-8132
TTOWNS1@MSN.COM

**PLAINTIFF'S ADDRESS**

Dr. Cedric Hicks
1079 Timberline Ridge
Calera, AL 35040

**DEFENDANT'S ADDRESS**

University of Alabama Birmingham, Montgomery Campus
2119 East South Boulevard
Suite 304
Montgomery, Alabama 36116